EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
SAURISH APPLEBY-BHATTACHARJEE (Cal. Bar No. 286264)
Assistant United States Attorneys
General Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4491/2917
Facsimile: (213) 894-0141
E-mail: julius.nam@usdoj.gov
saurish.bhattacharjee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ARSEN TERZYAN,

Defendant.

CR No. 15-621-R-3

GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ARSEN TERZYAN; DECLARATION OF SPECIAL AGENT DAVID REYNOLDS

Sentencing Date: 6/20/2016
Sentencing Time: 10:00 a.m.
Location: Courtroom of the Hon. Manuel L. Real

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julius J. Nam and Saurish Appleby-Bhattacharjee, hereby files its sentencing position for defendant ARSEN TERZYAN. The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report submitted by the United States Probation Office, the declaration of

United States Secret Service Special Agent David Reynolds and its attached exhibits, and any other evidence or argument that the Court may wish to consider at the time of sentencing. The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: June 6, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/ Saurish Appleby-Bhattacharjee
JULIUS J. NAM
SAURISH APPLEBY-BHATTACHARJEE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION PAGE

I. INTRODUCTION....................................................1

II. THE PRESENTENCE INVESTIGATION REPORT.........................1

III. APPLICABLE SENTENCING GUIDELINES AND STATUTORY MINIMUM SENTENCE........................................................2

A. Base Offense Level (U.S.S.G. § 2B1.1(a))..................3

B. Intended Loss Amount of Between $250,000 and $550,000 (U.S.S.G. § 2B1.1(b)(1)(G))..............................3

C. 10 or More Victims (U.S.S.G. § 2B1.1(b)(2)(A))............6

D. Trafficking of Unauthorized Access Devices (U.S.S.G. § 2B1.1(B)(11))..........................................6

IV. GOVERNMENT'S SENTENCING RECOMMENDATION........................8

A. 18 U.S.C. § 3553(a)(1)....................................9

B. 18 U.S.C. § 3553(a)(2)...................................10

C. 18 U.S.C. § 3553(a)(3)-(7)...............................10

V. CONCLUSION.....................................................12

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**STATUTES**

18 U.S.C. § 1028A....................1

18 U.S.C. § 1029....................1, 3, 8

18 U.S.C. § 3553....................9, 10

18 U.S.C. § 3664....................11

**SENTENCING GUIDELINES**

U.S.S.G. § 1B1.3....................5, 8

U.S.S.G. § 2B1.1....................passim

U.S.S.G. § 5E1.2....................2, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On March 7, 2016, defendant Arsen Terzyan ("defendant") pleaded guilty to Counts One, Eighteen, and Nineteen of the twenty-count indictment in United States v. Daniyelyan, et al., CR 15-621-R, which charge defendant, respectively, with conspiracy to possess fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2); possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. No. 172; see also Dkt. No. 236 (accepting defendant's guilty pleas).) The underlying facts of defendant's offenses, as set forth in the plea agreement and the PSR, are not disputed by either party. The government concurs with the PSR's calculation of defendant's total offense level and criminal history category. For the reasons set forth below, the government recommends a sentence of 54 months' imprisonment, a two-year term of supervised release, a fine in the amount of $6,000, and a special assessment of $300.

## II. THE PRESENTENCE INVESTIGATION REPORT

On April 26, 2016, the United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") in this matter. (Dkt. No. 248.) The USPO determined that: defendant's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") base offense level is 6 under U.S.S.G. § 2B1.1(a) and that he is subject to a 12-level enhancement for loss of more than $250,000 but less than $550,000 under U.S.S.G. § 2B1.1(b)(1)(G); a 2-level enhancement for 10 or more victims under § 2B1.1(b)(2)(A); and another 2-level enhancement under § 2B1.1(b)(11)(A) for use of device-making equipment. (PSR ¶¶ 25-

35.) After assessing defendant's role in the instant conspiracy, the USPO determined that he was "deeply involved in multiple aspects of this offense and integral to the completion of the offense[.]" (Id. ¶ 33.) The USPO accordingly did not apply any mitigating role adjustment. (Id.) And upon accounting for defendant's acceptance of responsibility, the USPO reached a total offense level of 19. (Id. ¶ 39.) Defendant has a criminal history score of 0, placing him in criminal history category I. (Id. ¶¶ 44-45.)

Thus, the USPO identified the pertinent Guidelines imprisonment range, including the mandatory consecutive two-year sentence for defendant's aggravated identity theft conviction on Count Nineteen, to be 54 to 61 months. (Id. ¶ 73.) The USPO also found the applicable Guidelines range for a supervised release term to be 1 to 3 years. (Id. ¶ 75.) Further, the USPO identified the applicable Guidelines range for a fine as $6,000 to $60,000 pursuant to U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1), and indicated both that defendant would be able to pay a fine of $2,000 immediately, with monthly payments of at least $114 to follow. (Id. ¶¶ 69-70, 82.) The USPO did not identify any restitution amount or victims to which restitution is due. (Id. ¶¶ 84-87.) The USPO also did not identify any grounds for a departure or a variance. (Id. ¶¶ 90-91.) Nor has the USPO disclosed its sentencing recommendation to the parties.

**III. APPLICABLE SENTENCING GUIDELINES AND STATUTORY MINIMUM SENTENCE**

Defendant and the government have not reached any agreement on applicable Sentencing Guidelines factors. (See Plea Agmt., ¶ 17.) With just one exception concerning the USPO's rationale for applying a 2-level enhancement under U.S.S.G. § 2B1.1(b)(11), the government

concurs with the Sentencing Guidelines factors that the USPO has deemed applicable to defendant's conduct here.

**A. Base Offense Level (U.S.S.G. § 2B1.1(a))**

The USPO correctly notes (see PSR ¶ 25) that as to defendant's convictions on Counts One and Eighteen for violations of 18 U.S.C. § 1029, the Sentencing Guidelines prescribe a base offense level of 6. U.S.S.G. § 2B1.1(a)(2); see also id., App'x A at 553 (specifying applicable Guidelines section for offenses under 18 U.S.C. § 1029).

**B. Intended Loss Amount of Between $250,000 and $550,000 (U.S.S.G. § 2B1.1(b)(1)(G))**

Under U.S.S.G. § 2B1.1(b)(1), defendant's offense level is subject to incremental enhancements if the loss amount attributable to him exceeds $6,500. (See PSR ¶ 26.) Here, the USPO concluded:

> [T]he reasonable amount of loss attributable to Terzyan for his conduct is between $250,000 and $550,000. This amount is derived from multiplying the number of access devices found on [skimmers that had been installed at] gas stations [by members of the conspiracy] beginning on July 30, 2014, (464), and the number of access devices found at Terzyan's home on the date of his arrest (78) by $500, which totals $271,000.

(Id. ¶ 28.) The USPO's determination in this regard is amply supported by the factual basis in the parties' plea agreement, and the declaration of United States Secret Service ("USSS") Special Agent ("SA") David Reynolds attached hereto ("Reynolds Decl.").

As the USPO correctly noted, defendant, along with his cohort of co-conspirators, traveled to multiple gas stations in Southern California, on two different dates, to assist in installing skimmers at the point-of-sale terminals of gas pumps. (Plea Agmt. ¶ 15; PSR ¶¶ 9-17.) What is more, defendant knew that information gathered through these skimmers would be encoded on blank access devices and

used by members of the conspiracy to make fraudulent purchases without authorization. (Plea Agmt. ¶ 15; PSR ¶¶ 13-17.) His conduct in this regard shows that he was "deeply involved in multiple aspects of this offense and integral to the completion of the offense[.]" (PSR ¶ 33.)

In the course of investigating this conspiracy, the USSS and other law enforcement agencies successfully recovered a number of skimmers that had been installed on different dates at different gas stations by members of the conspiracy. (Reynolds Decl. ¶ 2.) Many of these skimmers were forensically analyzed by the USSS to determine how many access devices, if any, were stored on each. (Id.) SA Reynolds compiled a spreadsheet tracking, among other things, the date and location from which each skimmer was collected, and the number of access devices that were stored on each skimmer before it was recovered by law enforcement. (Id. ¶ 3, Ex. 1.) This spreadsheet shows that nearly 1,000 unauthorized access devices were stored on just the subset of skimmers that had been examined forensically by the USSS. (Id.)

Defendant, for his part, was first observed entering the conspiracy on July 30, 2014, when he and other members of the conspiracy traveled to three gas stations in Los Angeles and Santa Monica, where they installed skimmers at a point-of-sale terminal at each gas station in order to steal unsuspecting customers' credit and debit card numbers. (Plea Agmt. ¶ 15; PSR ¶ 13.) On April 9, 2015, he again assisted his co-conspirators in a skimmer installation at a Beverly Hills gas station. (Plea Agmt. ¶ 15; PSR ¶ 14.) And on October 21, 2015, he possessed at least 78 real credit and debit card numbers, which he knew belonged to real individuals, on a USB flash

drive in a safe at his residence. (Plea Agmt. ¶ 15; PSR ¶ 16.) The only facts in the record establish that defendant remained a member of the conspiracy during this entire period from July 2014 through October 2015.

As set forth in U.S.S.G. § 1B1.3(a)(1)(B)(iii), "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were . . . reasonably foreseeable in connection with that criminal activity" constitute relevant conduct that may be considered in determining defendant's specific offense characteristics. A total of 464 access devices were found stored on the skimmers installed by defendant and other members of the conspiracy between July 30, 2014 and the conspiracy's end in October 2015. (Reynolds Decl. ¶ 3, Ex. 1.) Adding to this number the 78 access devices found in defendant's home (Plea Agmt. ¶ 15; PSR ¶ 16), defendant is rightfully attributed a loss amount corresponding to the 542 total access devices associated with his tenure as an observed member of the conspiracy. Multiplying this total number by $500 per access device, as is mandated by the Guidelines, the intended loss amount attributable to defendant is $271,000. See U.S.S.G. § 2B1.1, cmt. n.3(F)(i) ("In a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall not be less than $500 per access device."). Defendant's intended loss thus falls within the 12-level enhancement set forth in U.S.S.G. § 2B1.1(b)(1)(G).

**C. 10 or More Victims (U.S.S.G. § 2B1.1(b)(2)(A))**

The USPO determined that a 2-level enhancement for 10 or more victims was appropriate based on a representation by the government that "there are more than 10 victim financial institutions as a result of this offense." (PSR ¶ 29.) The government's representation in this regard is well supported by SA Reynolds' declaration.

As discussed previously, a forensic examination found nearly 1,000 unauthorized access devices stored on just a subset of the skimmers that had been installed by members of the conspiracy. (Reynolds Decl. ¶ 3, Ex. 1.) Additional access devices were found on electronics and digital media seized from the homes of defendant and his co-conspirators. (Id. ¶ 4; see also PSR ¶¶ 16-17.) The USSS submitted these access devices to different credit card companies, including Visa, so that these companies could, in turn, determine whether the stolen credit and debit card numbers: (1) belonged to real persons; and (2) had been used to make fraudulent purchases. (Reynolds Decl. ¶ 4.) SA Reynolds submits, with his declaration, a spreadsheet totaling the losses incurred, as reported by Visa, from fraudulent use of the access devices that the USSS had submitted to Visa for analysis. (Id. ¶ 5, Ex. 2.) This spreadsheet shows more than 10 financial institutions incurred financial losses as a result of fraudulent use of those access devices. (See id.)

**D. Trafficking of Unauthorized Access Devices (U.S.S.G. § 2B1.1(B)(11))**

The USPO notes that a "2-level increase is appropriate for trafficking of unauthorized access devices" and that "the Government

has indicated that it intends to seek the enhancement." (PSR ¶ 31.) The USPO also states, however, that under U.S.S.G. § 2B1.1(b)(11), "a 2-level increase for the possession of device making equipment is more appropriate for the facts in this case," where the USPO did not see "evidence establishing that the defendants trafficked in access devices," even though defendant admitted that "on October 21, 2015, access device-making equipment, including a computer connected to a magnetic card reader and writer, was found at a co-conspirator's residence," which "was to be used for the purpose of creating counterfeit and unauthorized access devices using the real credit card and debit card numbers that [defendant] and other members of the conspiracy stole from gas station customers using the skimming devices." (PSR ¶¶ 17, 30-31.) As § 2B1.1(b)(11) provides for a single 2-level enhancement based on multiple rationales – two of which are possession of device-making equipment and trafficking of unauthorized access devices – the USPO acknowledged that the two "alternative enhancements under the same section . . . have the same effect on the offense level," and "[t]he distinction between possession and trafficking may be, in this case, more a matter of characterization than of substance." (Id. ¶ 31.)

While the government agrees with the PSR that a 2-level enhancement for possession of device-making equipment could apply to defendant in light of his participation in a conspiracy that included possession and use of equipment to manufacture access devices, the government disagrees with the USPO's apparent analysis that evidence of trafficking is required for the related enhancement to apply under § 2B1.1(b)(11).

Pursuant to 18 U.S.C. § 1029(e), "traffic" means "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." 18 U.S.C. § 1029(e)(5). Moreover, as stated above, U.S.S.G. § 1B1.3(a)(1)(B)(iii) delineates the scope of relevant conduct that may be considered in determining defendant's specific offense characteristics.

Here, as the parties have stipulated in the plea agreement, "[d]efendant and his co-conspirators had access to the real credit and debit card numbers stored on the skimming devices installed in the point-of-sale terminals, and knew that these stolen credit and debit card numbers would be used, without authorization, to make fraudulent purchases." (Plea Agmt. ¶ 15; PSR ¶ 15.) For the credit and debit card numbers that defendant helped steal to be used to make fraudulent purchases, it was reasonably foreseeable that transfer, or trafficking, of the card numbers would need to take place, and ample evidence in this case demonstrated that stolen credit and debit card numbers were used to make fraudulent purchases such that there were at least ten victim financial entities. (PSR ¶ 29; Reynolds Decl. ¶ 5, Ex. 2.) Accordingly, while both the possession of access device-making equipment and the trafficking of unauthorized access devices that were part of – and reasonably foreseeable in – the instant conspiracy offense equally warrant a 2-level enhancement under § 2B1.1(b)(11), the government asks the Court to apply the trafficking enhancement on these facts.

**IV. GOVERNMENT'S SENTENCING RECOMMENDATION**

Setting aside the USPO's rationale for application of the § 2B1.1(b)(11) enhancement, the government otherwise agrees with all sentencing calculations in the PSR, and recommends a low-end term of

54 months' imprisonment, a two-year term of supervised release, a fine in the amount of $6,000, and a special assessment of $300. This sentence is sufficient, but not greater than necessary, to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

**A. 18 U.S.C. § 3553(a)(1)**

Under 18 U.S.C. § 3553(a)(1), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in imposing a sentence. Defendant has pleaded guilty to a conspiracy to install skimming devices at gas station pumps throughout Southern California and Las Vegas with the goal of stealing ATM, credit, and debit card numbers and associated customer information from unsuspecting gas station customers, knowing that the stolen information would be used to make fraudulent purchases. (PSR ¶¶ 9-15.) This offense resulted in the theft of more than 2,000 credit and debit card numbers over the period of at least two-and-a-half years. Specifically, defendant participated in this conspiracy for at least fourteen months during which at least 464 credit and debit card numbers were stolen, and he had an additional 78 unauthorized access devices in his home, leading to an intended loss amount of $271,000, pursuant to U.S.S.G. § 2B1.1(b)(1), Application Note 3(F), as detailed above. The government's recommended sentence justly reflects the seriousness of defendant's offense, which was committed with disregard for other people's property and for a fraudulent purpose. Taking into consideration defendant's acceptance of responsibility for his role and participation in the offense, his relatively light criminal history, and his apparently positive character and conduct as attested to by members of his community (id. ¶¶ 53, 57), the government's

recommended custodial sentence of 54 months at the low end of the guideline range is appropriate and just.

**B. 18 U.S.C. § 3553(a)(2)**

Under 18 U.S.C. § 3553(a)(2), the Court must consider "the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

A sentence of 54 months will serve to protect the community from further crimes by defendant, afford adequate specific and general deterrence, and promote respect for the law.

**C. 18 U.S.C. § 3553(a)(3)-(7)**

Under 18 U.S.C. § 3553(a)(3)-(7), the Court must consider "the kinds of sentences available," "the kinds of sentence and the sentencing range established," "any pertinent policy statement," "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense." The government's recommended sentence serves these statutory objectives, where — notwithstanding his mandatory 2-year imprisonment on Count Nineteen — defendant's criminal history (category I) and total offense level (level 19) place him in Zone D and, thus, outside the possibility of a within-Guidelines sentence that would include only a probationary term. U.S.S.G. § 5B1.1, cmt. n.2. Moreover, in the absence of any significant mitigating factors that warrant departures

or variances, a within-Guidelines sentence also is not likely to result in unwarranted sentencing disparities. (PSR ¶¶ 105-106.)

As for the fine, defendant has a significant net worth and a substantial monthly income, with a positive monthly cash flow even after accounting for expenses and liabilities. (Id. ¶ 67.) He is thus able to pay at least a low-end fine of $6,000, as determined pursuant to U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1).[1] (Id. ¶¶ 69-70, 82.) The government thus asks the Court to impose a fine of $6,000, with $2,000 to be paid immediately, and the remainder to be paid in monthly installments of at least $114, as recommended by the USPO. (Id. ¶¶ 69-70.)

Lastly, with respect to restitution in this case, the government has identified actual financial losses sustained by victim financial institutions and may separately be seeking restitution from each defendant in this case through post-sentencing restitution proceedings as provided for in U.S.S.G. § 5E1.1. Because the government is continuing to gather information for purposes of restitution, the government respectfully requests that the Court schedule a deferred restitution hearing pursuant to 18 U.S.C. § 3664(d)(5), within ninety days from the date of defendant’s sentencing.

///

///

///

[1] Pursuant to U.S.S.G. § 5E1.2(h)(1), the applicable fine range for offenses committed prior to November 1, 2015 is determined by using the Guidelines range in the version of § 5E1.2(c) that was in effect on November 1, 2014. As defendant committed the offenses of conviction before November 1, 2015, the applicable range is $6,000 to $60,000. See U.S.S.G. § 5E1.2(c) (2014).

**V. CONCLUSION**

The government respectfully recommends a sentence of 54 months' imprisonment, a two-year period of supervised release, a mandatory special assessment of $300, and a fine of $6,000, with $2,000 to be paid immediately, and the remainder to be paid in monthly installments of at least $114.